### JOHN R. McGEE v. FRANKLIN PUBLISHING COMPANY.

Decided January 27, 1897.

**1.  Public School Fund—Constitution—School Supplies.**

Under art. 7, sec. 1, of the Constitution it is within the power of the Legislature to provide for the purchase, out of public school funds, of all appurtenances or appliances necessary or useful as a part of an efficient system of free schools.

**2.  School Furniture—Grammar Chart.**

Section 81 of the Act of 1893, which authorizes school trustees to purchase furniture, intended only furniture for the house or building, so as to make it habitable and comfortable, and did not authorize the purchase of appurtenances useful merely in furtherance of the system of instruction, such as a grammar chart for use in teaching.

APPEAL from the District Court of McCulloch County.   Tried below before Hon. J. O. WOODWARD.

*M. M. Crane,* Attorney-General, and *Wm. M. Knight,* assistant, for appellant.—The statutes authorizing the expenditure of any part of the available school fund for the purchase of furniture or the erection or repair of buildings, are violative of sec. 5, art. 7, of the Constitution of Texas, which requires the available school fund to be applied, annually, to the support of the public free schools, and which forbids the enacting of a law appropriating any part of such fund to any other purpose whatever.   Constitution, art. 7, sec. 5, art. 7, sec. 3, art. 7, sec. 6; General Laws 23rd Legislature, sec. 81, p. 206.

Charts and illustrated maps are not furniture within the meaning of sec. 81 of the Act of May 20, 1893, General Laws, page 206, and therefore the school fund can not be lawfully used in buying them.

There being no definition of the word "furniture" in the school laws, and the State Superintendent being authorized by sec. 23 of the School Law of 1893, Rev. Stats., art. 2938d, "to issue instructions and regulations," he instructed the county treasurer in this case not to pay the warrant sued on, and therefore the plaintiff could not recover.   Rev. Stats., art. 2938d; School Law of 1893, sec. 81 et seq.

*F. M. Newman,* for appellee.—Sec. 81, ch. 122, Acts of 1893, is not violative of the State Constitution.   It is authorized by secs. 3 and 5, art. 7, of the Constitution.

The article purchased was furniture within the meaning of the law. Rev. Stats., arts. 3268, 3984 to 3989, 3935, 3959, 3929; Devine v. Mc-Bride, 35 S. W. Rep., 317; Sansom v. Mercer, 68 Texas, 488; Caviel v. Coleman, 72 Texas, 550; Brown v. Ruse, 69 Texas, 590; Terrell v. Greene, 88 Texas, 540; Porter v. State, 78 Texas, 592; City of Houston v. Emery's Sons, 76 Texas, 322; Caldwell County v. Harbert, 68 Texas, 322; Railway v. Locke, 63 Texas, 626; Furniture Co. v. Hotchkiss, 33 S. W. Rep., 855.

*S. R. Fisher* and *Jno. C. Townes*, *Z. T. Fulmore* and *Frank & Young*, also filed written or printed arguments on behalf of appellee.

FISHER, CHIEF JUSTICE.—*Statement of the Nature and Result of the Suit.*—This is a suit for a mandamus brought by the Franklin Publishing Company, a private corporation, against John R. McGee, Treasurer of McCulloch County, in which the plaintiff sought to compel the county treasurer to pay a warrant for $42.50 out of certain funds in his hands, belonging to Bear Creek School District, No. 5, in said county. Plaintiff claimed to be the owner of the warrant, which had been issued to it for a certain "normal series grammar chart," sold by it to the trustees of such district for use in the district school.

The defendant filed an answer consisting of numerous pleas and exceptions, including a general denial and a special plea, averring that in refusing to pay said warrant such county treasurer had acted under instructions of the State Superintendent of Public Instruction.

The case was tried without a jury, and resulted in a judgment being rendered for the plaintiff.

We here state in full the facts in the record: It is agreed that plaintiff proved, that on March 13, 1895, and continuously since that time, defendant, John R. McGee, was and has been the duly elected and qualified and acting County Treasurer of McCulloch County, Texas; that on March 13, 1895, N. P. Fulcher, W. T. Cavin and E. E. Deland were the duly elected, qualified and acting School Trustees for School District No. 5, in McCulloch County, Texas; that on March 13, 1895, and continuously since then, J. G. Plummer was and has been duly elected and qualified and acting County Judge of McCulloch County, Texas, and during said time was ex-officio County Superintendent of Public Instruction in and for McCulloch County, Texas, and was acting as such; that McCulloch County, Texas, prior to March 13, 1895, and continuously since then, was and has been subdivided into school districts, and that said District No. 5 was and is one of said districts, and that in said districts there was and is a school known as Bear Creek school, No. 2, and that in said district for the year 1895 a special school tax of twenty cents on the one hundred dollars valuation was levied and collected, and that the amount of money so raised, and collected on account of said special tax for Bear Creek school No. 2 in said district amounted to $83.59, after all legal commissions were deducted

therefrom, and one-fourth of the available school fund apportioned to said Bear Creek school in said district for the scholastic year beginning September 1, 1895, amounted to $40.51, after deducting all legal commissions; that on or about February 1, 1896, said special tax and available school fund for said Bear Creek school in said District No. 5 had been collected and paid into the hands of and delivered to said John R. McGee, county treasurer of McCulloch County, Texas; that on March 13, 1895, N. P. Fulcher and W. T. Cavin, trustees as aforesaid, made application to said J. G. Plummer, county judge, as aforesaid, for an appropriation of the sum of $42.50, out of the funds belonging to said Bear Creek school in said district for the year beginning September 1, 1895, to purchase furniture for said school, to-wit, a normal series grammar chart; that on March 13, 1895, said trustees, N. P. Fulcher and W. T. Cavin, contracted with plaintiff by and through plaintiff's agent, C. A. Williamson, for the purchase of a normal series grammar chart, and agreed to pay to plaintiff for same the sum of $42.50, to be paid on October 1, 1895, out of the funds belonging to said school, and made and executed an instrument in writing, which is in words and figures as follows, to-wit:

"No. 1.            Brady, March 13th, 1895.            $42.50.

"Bear Creek school dist. or Com. No. 5, county of McCulloch, State of Texas. Pay to C. A. Williamson or order the sum of forty-two ($42.50) dollars and fifty cents due on or before the 1st day of Oct., 1895, out of any money belonging to Bear Creek school dist. or Com. No. 5 of McCulloch County, State of Texas, for Normal Series purchased on the 13th day of March, 1895.            N. P. Fulcher,

"Countersigned and                           W. T. Cavin.
payment guaranteed.            Trustees of Bear Creek School Dist. or
                                Com. No. 5 McCulloch County, Texas.

"To Treasurer, McCulloch County, Texas."

And said instrument is indorsed on the back thereof as follows, to-wit:

"I hereby approve within Normal purchase, and order that funds to the credit of school Dist. No. 5, school No. 2, sufficient to meet said purchase, be set aside for that purpose, and I agree to approve this warrant on its face when due, or as soon thereafter as there be sufficient funds to pay same.            Jno. G. Plummer, Co. Judge,

"McCulloch Co., Texas, 4-10-1895."

And that said instrument of writing is indorsed on the face thereof as follows, to-wit:

"Approved Nov. 9th, 1895.

"J. G. Plummer, Co. Judge,

"McCulloch County, Texas."

And that said instrument is also indorsed on the back thereof as follow, to-wit:

"C. A. Williamson."

That plaintiff furnished to said Bear Creek School No. 2, in said district, the said Normal Series Grammar Chart prior to October 1, 1895, according to contract with said trustees; and that the trustees of said school examined said chart on its arrival, and said that the same was approved by Judge Plummer; that plaintiff is now and has always been the legal and equitable owner of said warrant; that said J. G. Plummer, County Judge as aforesaid, on March 13, 1895, entered up an order appropriating $42.50 of the funds belonging to said school for the year beginning September 1, 1895, for the payment of said warrant, and he, said judge, at proper time and in proper manner and form, set aside said sum of $42.50 out of the funds belonging to said school for said year beginning September 1, 1895, for the purpose of paying said warrant, and that said money so appropriated and set aside to pay said warrant is now in the hands of defendant, John R. McGee, as County Treasurer of McCulloch County, Texas, and has ever been since on or about February 1, 1896; that on or about February 1, 1896, and at various times since then, all of which was since said money was received by defendant, plaintiff has demanded of defendant that he pay said warrant, but he has refused and still refuses to pay the same or any part of it.

John R. McGee, defendant, being sworn at request of plaintiff, testified that, as well as he could remember, the said normal series grammar chart is described as follows, to-wit: About ten or twelve leaves or sheets of thick, heavy paper, printed on both sides with pictures, diagrams, designs and characters of different kinds, all of which he could not remember (the same having been examined by the trustees in his office); that said leaves were fastened or bound together at one end, were about two and a half feet wide and about three and a half feet long, and were encased in a cabinet or book, wide enough and long enough to hold them straight when spread out; that said normal series grammar chart, when used, stood up about four feet high, something like a painter's easel; that said leaves or sheets, when used, were turned one at a time, and after being turned hung behind or on the opposite side from the front; that only one side of said leaves could be used at a time, and when the side which had not been used was to be exhibited, there was some means of reversing the concern so that side could be shown; that when said warrant was presented to the county treasurer for payment he informed the party presenting same that he was in doubt as to the legality of said warrant, and declined to pay same on the ground that he entertained doubts as to the legality or propriety of paying said warrant, and asked the party to wait until the matter could be investigated and decided upon; that he at once addressed a letter to Hon. J. M. Carlisle, State Superintendent of Public Instruction, at Austin, Texas, laying the matter before him, and asking him for a ruling thereon instructing him, the defendant, whether to pay or not to pay said warrant, and received from Hon. J. M. Carlisle, State Superintendent, in reply, the following letter, which was read in evidence:

"Austin, Texas, December 11, 1895.

"Mr. John R. McGee, Brady, Texas:

Dear Sir:—Replying to your letter of the 4th in regard to two vouchers presented to you for payment, one for water supplied to a school, the other for an arithmetical chart supplied to another school, permit me to say that, not being familiar with the necessity of furnishing water to the school and paying for the same out of the school funds, I am not ready to pass upon that voucher, but I am ready to say that the purchase of the arithmetic chart for $47.50 is an illegal and unathorized expenditure of the public school funds, and such voucher should not be paid. I will ask you to secure the facts in the case of the voucher issued for supplying water, and I should be pleased to give that matter a more thorough investigation, and then I will give a positive ruling in regard to it.

"Most respectfully,

"J. M. Carlisle,

"State Superintendent."

The treasurer stated that this letter was in answer to one that he (the witness) wrote regarding this identical warrant in controversy (and the one for water supplied another school), but that he (the witness) in writing Mr. Carlisle stated that it (the warrant) had been given for the purchase of an arithmetic chart, when he should have stated that it was given for the purchase of a normal series chart. Also that the amount should have been stated as being $42.50 instead of $47.50. That he afterwards received other letters and printed circulars from the said Mr. Carlisle, State Superintendent, regarding this and other chart claims; also regarding both grammar and arithmetic charts, and the rulings of the said J. M. Carlisle, State Superintendent, to this defendant were that said claims should not be paid; that this said warrant was presented to him a second time for payment, and that he positively refused to pay the same or any part of it, because of the doubt and uncertainty in his mind as to the legality or propriety of paying same.

The treasurer stated that he also referred the matter of his refusing to pay said warrant to the Commissioners Court of McCulloch County, Texas, as required by law, and said court refused to pass an order regarding the matter or to give him any instruction or direction as to what he should do regarding said warrant; that under the law he felt bound to obey the ruling of the State Superintendent of Public Instruction, and for that reason could not pay said warrant; that the reason of his entertaining grave doubts as to the legality and propriety of said warrant being paid out of the public school fund, and also his reason for not paying said warrant, was that the said normal series grammar chart, for purchase of which the said warrant was given, was and is not an article specified in the law for which the public free school funds may be expended.

*Opinion.*—The two important questions raised in this appeal which we are asked to determine are:—Are the statutes which authorize the school trustees to purchase furniture for school houses in violation of any of the provisions of the Constitution relating to the raising of funds for school purposes and the use and application of the same? And, if not, then does the grammar chart in question come within the meaning of the term furniture, as used in the statutes in question?

As we decide that the term furniture, as used in these statutes, does not embrace and include a grammar chart, we could refrain from expressing any opinion as to the constitutional objection urged to these statutes; but in view of the importance of the question, and the public interest involved in it, we state our views upon this question as outlining the policy that will govern this court and the ruling we will make upon it when it may be presented in a way that renders it necessary to be decided.

Section one, article seven, of the Constitution states that, "A general diffusion of knowledge being essential to the preservation of the liberties and rights of the people, it shall be the duty of the Legislature of the State to establish and make suitable provision for the support and maintenance of an efficient system of free schools."

The principle declared in the first part of this section is but the repetition of a truism, but the remaining part of it is a command to the Legislature to adopt such ends and means and appliances as in its discretion it may regard as necessary or useful for the support and maintenance of an efficient system of free schools. The true meaning to be given to the term "efficient system" embraces the idea of instruction in an enlarged sense, and not that it should be confined to narrow lines. Its meaning is broad enough to allow such a scheme of instruction as the Legislature in the exercise of its discretion may provide. It may include all the appurtenances and appliances that are used in this enlightened age that are necessary or useful as a part of an "efficient system" of public schools. And in furthering and providing for this efficient system the Legislature may exercise its discretion in determining what may be necessary or useful as a part of it. Under the authority of this provision of the Constitution the Legislature has provided for the purchase of furniture for school houses.

Section three, article seven, of the Constitution also authorizes the Legislature to provide for the erection of school buildings. The use of the school building would be greatly impaired, if not entirely useless, unless it was furnished in a way usual in such cases; and this the Legislature had the right to provide for in furtherance of the efficiency of the system. With these views we can perceive no constitutional objection to these statutes.

Section 81 of the Act of 1893, which was in force when the grammar chart in question was purchased, authorizes the school trustees to purchase furniture for the school house, and there are other sections of the same statute providing how such contracts shall be paid and satisfied.

If there is any legislative authority for the purchase of the chart in question, it is by reason of these sections of the statute. And in this connection, in determining what powers may be exercised by the school trustees, we are of opinion that they may only exercise such authority as is delegated by statute, and that no implied agency exists by which they may exercise their discretion in purchasing for the school articles which are not of the class authorized by the Legislature. Honaker v. Board of Education, 24 S. E. Rep., 545; Estes v. School Dist., 33 Me., 170.

The statutes in question, which authorize the purchase of furniture, clearly indicate that it was furniture for the house or building that was intended, so as to make it habitable and comfortable, and not appurtenances and appliances and supplies that may be useful to the school as a part of its system of instruction or as an aid thereto. The grammar chart may be useful in furtherance of the system of instruction that prevails in the schools where used, but it serves no necessary or useful purpose as an article of furniture to a school house in order that it may with comfort be used and occupied as a school house. The term furniture, used in the statute, was evidently intended to embrace only such articles as were generally understood to be in general use in school houses as a part of the furniture of the house, as distinguished from appliances and apparatus that may be used in instructing the scholars.

With this view of the statute, we do not think that the purchase of the chart in question was authorized. Therefore, the judgment below is reversed, and judgment here rendered that appellee take nothing by its suit, and that all the costs of the court below and of this court be taxed against it.

*Reversed and rendered.*

Writ of error refused.